UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**UNITED FIRE & CASUALTY
COMPANY,**

**Plaintiff,**

**v.**                                         **Case No.  6:19-cv-1049-CEM-EJK**

**PROGRESSIVE EXPRESS
INSURANCE COMPANY,**

**Defendant.**
_____/

### ORDER

THIS CAUSE is before the Court on Plaintiff's Renewed Motion for Judgment as a Matter of Law ("JMOL Motion," Doc. 336) and Plaintiff's Alternative Motion for New Trial ("New Trial Motion," Doc. 338).[1] Defendant filed Responses in Opposition (Doc. 342; Doc. 343). For the reasons stated herein, both motions will be denied.

### I.    BACKGROUND

This bad faith action arose between Plaintiff—the excess insurer for non-party Great South Timber and Lumber LLC ("Great South")—and Defendant—the

---

[1] Plaintiff also renewed its motion for judgment as a matter of law ore tenus, which will be denied as moot. (*See generally* Plaintiff's Renewed Motion for Judgment as a Matter of Law, Doc. 316); (Min. Entry, Doc. 314, at 2). Additionally, Plaintiff's New Trial Motion was filed twice, (*see generally* Doc. 337), the first of which will be denied as moot.

primary insurer for Great South. (*See* Joint Final Pretrial Statement, Doc. 217, at 2–9; Trial Tr. Vol. 1, Doc. 344, at 26–30 (both parties agreeing to these basic facts for the statement of the case)). The dispute relates to a motor vehicle collision where non-parties Pierce and Lois Mills (collectively, "the Millses") were seriously injured and for which they sought to hold Great South, among other entities insured by Defendant, liable. (Doc. 344 at 26–30). The Millses agreed to settle their claims with all of Defendant's other insureds for Defendant's full policy limits, but the Millses refused to settle with Great South for that amount, and Great South was not included on the final release. (May 15, 2014 Kulik Letter, Doc. 323-28, at 2; June 12, 2013 Kulik E-mail, Doc. 323-32, at 1; Final Release, Doc. 323-4, at 1).

The case went to trial and at the close of the presentation of evidence Plaintiff moved for a directed verdict, (*see generally* "Directed Verdict Motion," Doc. 313), on which the Court deferred ruling and submitted the case to the jury, (*see* Trial Tr. Vol. 4, Doc. 347, at 194:3–8). The jury returned a verdict for Defendant, finding that Plaintiff had not proven by a preponderance of the evidence that Defendant acted in bad faith. (Verdict Form, Doc. 327, at 1).[2] Plaintiff timely renews its motion for judgment as a matter of law and moves in the alternative for a new trial. (*See generally* Doc. 336; Doc. 338).

---

[2] The jury did not reach the second question of the Verdict Form, which was whether they found "by a preponderance of the evidence that Defendant's bad faith conduct caused damages to Plaintiff." (Doc. 327 at 1).

## II.   MOTION FOR JUDGMENT AS A MATTER OF LAW

### A.   Legal Standard

The Court may grant a motion for judgment as a matter of law "[i]f a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a). "[J]udgment as a matter of law after the verdict may be granted only when, without weighing the credibility of the evidence, there can be but one reasonable conclusion as to the proper judgment." *Pulte Home Corp. v. Osmose Wood Preserving, Inc.*, 60 F.3d 734, 739 (11th Cir. 1995) (quotation omitted). In ruling on such a motion, the Court "must draw all reasonable inferences in favor of the nonmoving party." *Cleveland v. Home Shopping Network, Inc.*, 369 F.3d 1189, 1192–93 (11th Cir. 2004). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge. [A]lthough the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe." *Id.* at 1193 (alteration in original) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000)).

### B.   Analysis

Plaintiff argues multiple grounds in support of its JMOL Motion. As a preliminary matter, Defendant argues that all arguments raised by Plaintiff in its

JMOL Motion that were not raised in its Directed Verdict Motion must be rejected. (Doc. 342 at 3).

This Court "lack[s] authority to enter judgment under Rule 50(b) for [Plaintiff] on a ground not raised prior to the submission of the case to the jury." *Doe v. Celebrity Cruises, Inc.*, 394 F.3d 891, 902–03 (11th Cir. 2004). The Eleventh Circuit has "made clear that any renewal of a motion for judgment as a matter of law under Rule 50(b) must be based upon the same grounds as the original request for judgment as a matter of law made under Rule 50(a)." *Id.* "The rule protects the non-moving party's right to cure deficiencies in the evidence before the case is submitted to the jury." *Middlebrooks v. Hillcrest Foods, Inc.*, 256 F.3d 1241, 1245 (11th Cir. 2001).

In its Directed Verdict Motion, Plaintiff argued that the evidence at trial established that Defendant acted in bad faith by not sharing the findings of its accident reconstruction engineer with Great South or Plaintiff, by expending its entire policy limits without offering Great South or Plaintiff the opportunity to contribute to the settlement, and by depriving Great South of the opportunity to participate in negotiations with Millses' counsel. (Doc. 313 at 10–15). However, before submission of the case to the jury, Plaintiff argued other grounds ore tenus for a directed verdict as a supplement to its written motion, including that the evidence established that Defendant acted in bad faith by failing to treat its insured

equally, by failing to promptly explain coverage for Great South, by failing to timely communicate with Great South, and by failing to advise Great South of how to avoid an excess judgment. (Doc. 347 at 189:19–193:1). Therefore, upon review of the record, each of Plaintiff's asserted grounds for relief in its JMOL Motion were timely raised and renewed in accordance with Rule 50. (*See* Doc. 336 at 17–23). The Court will address each argument in turn.

Under Florida law, an insurer has a duty to act in good faith and with due regard for the interests of its insured. *Bos. Old Colony Ins. Co. v. Gutierrez*, 386 So. 2d 783, 785 (Fla. 1980)*.* As such, "[a]n insurer, in handling the defense of claims against its insured, has a duty to use the same degree of care and diligence as a person of ordinary care and prudence should exercise in the management of his own business." *Id*. "The insurer must investigate the facts, give fair consideration to a settlement offer that is not unreasonable under the facts, and settle, if possible, where a reasonably prudent person, faced with the prospect of paying the total recovery, would do so." *Id*. An insurer is also obligated to "advise the insured of settlement opportunities, to advise as to the probable outcome of the litigation, to warn of the possibility of an excess judgment, and to advise the insured of any steps he might take to avoid same." *Id*. "[T]he question of whether an insurer has acted in bad faith in handling claims against the insured is determined under the 'totality of the circumstances' standard." *See Berges v. Infinity Ins. Co.*, 896 So. 2d 665, 680 (Fla.

2004). Additionally, in equitable subrogation cases, "there is an explicit requirement of a causal connection between the primary insurer's bad-faith actions and the loss or damage suffered by the excess insurer." *Perera v. U.S. Fid. & Guar. Co.*, 35 So. 3d 893, 900–01 (Fla. 2010).

First, Plaintiff argues that Defendant breached its duty to act in good faith by not sharing the results of its accident reconstruction until after Defendant received the release signed by the Millses. (Doc. 336 at 19–20). Plaintiff argues that Defendant's alleged bad faith conduct resulted in damages to it because Plaintiff hired its own accident reconstruction expert in July 2015. (*Id.*; *see also* Rachel Keller Aff., Doc. 134-12, at 2). The evidence shows that Plaintiff verbally received Defendant's accident reconstruction report from Defendant's expert on September 2, 2014. (Call Log Sept. 2, 2014, Doc. 324-5, at 1). The evidence also shows that Defendant's expert "did not do a written report for" Defendant because it "only asked for a verbal report." (*Id.*; *see also* Doc. 347 at 150:19–152:7).[3]

For the proposition that an insurer's duty of good faith includes timely sharing expert information, Plaintiff cites solely to *Boston Old Colony* and *Vigilant Insurance Company. v. Continental Casualty Co.*, 33 So. 3d 734 (Fla. 4th DCA

---

[3] Plaintiff also argues that testimony from Rusty Ennis established that Defendant did not provide its expert results sooner "due to the erroneous belief that Great South Timber was not an insured party." (Doc. 336 at 20).  But Plaintiff does not provide a citation for any such testimony, and the Court will not dig through the record of a five-day jury trial in an effort to do Plaintiff's job for it. Regardless, such testimony would not change the outcome of the above analysis.

2010). (Doc. 336 at 19–20). Neither of those opinions discuss a duty to share expert information; they simply reiterate the basic bad faith legal framework discussed above. Further, Plaintiff fails to explain how Defendant acted in bad faith by providing its expert's results when it did. Plaintiff also does not address how Defendant's conduct could possibly be the cause of Plaintiff hiring an expert in July 2015 if Plaintiff had Defendant's accident reconstruction results in September 2014. Thus, Plaintiff has not established that there can "be but one reasonable conclusion as to the proper judgment." *Pulte Home Corp.*, 60 F.3d at 739.

Next, Plaintiff argues that Defendant acted in bad faith by exhausting its entire policy limits without offering Great South or Plaintiff the opportunity to contribute to the settlement. (Doc. 336 at 22–23). Plaintiff asserts that it and Great South had the ability and desire to contribute at least one dollar toward settlement, which according to Plaintiff's expert, would have prevented Defendant from terminating its duty to defend Great South. (*Id.* at 15–17). Plaintiff's expert opined at trial that this duty to inform Plaintiff of such an option is based on an "industry standard." (Doc. 347 at 163:5–164:25). In contrast, however, Plaintiff's claims adjuster, who had been an "adjuster for about 30 years," testified that he had never heard of this practice "at all in the insurance industry." (Schroll Dep., Doc. 258 at 12:11–13, 57:10–17).

Accordingly, there was conflicting testimony whether this alleged duty to inform existed and the "substantial conflict in evidence . . . create[d] a jury question." *Rankin v. Evans*, 133 F.3d 1425, 1435 (11th Cir. 1998).[4] As discussed above, credibility determinations and weighing of the evidence are functions of the jury. *Cleveland*, 369 F.3d at 1193. Thus, Plaintiff has not shown that "the evidence [was] so weighted in favor of one side" to entitle Plaintiff to succeed as a matter of law. *Abel v. Dubberly*, 210 F.3d 1334, 1337 (11th Cir. 2000).

Similarly, Plaintiff argues that Defendant acted in bad faith by treating its insured unequally because Defendant did not retain counsel for Great South despite doing so for its other insureds. (Doc. 336 at 17). Although Plaintiff's expert testified at trial that this unequal treatment constituted bad faith, (Doc. 347 at 131:12–132:1), Plaintiff has not presented any law that supports an insurer's duty to provide counsel equally. *See Hartford Ins. Co. of the Midwest v. BellSouth Telecomms., Inc.*, 824 So. 2d 234, 241 (Fla. 4th DCA 2002) (interpreting a duty to defend under a particular policy only); Fla. Admin. Code Ann. R. 69B-220.201 (describing an adjuster's code of ethics to treat claimants equally); *Primeaux v. Progressive American Ins. Co.*, No. 2:20-cv-941-JLB-NPM, 2022 U.S. Dist. LEXIS 140775, at *5 (M.D. Fla. Aug. 8,

---

[4] It is also worth noting that Plaintiff provides no legal support for the contention that if Plaintiff had contributed a nominal amount toward settlement it would have extended Defendant's duty to defend Great South.

2022) (holding that testimony on adherence to industry standards would assist the jury in the assessment of the totality of circumstances).

This Court has already determined that Defendant had no independent duty to provide pre- or post-settlement counsel to Great South. (March 15, 2022 Order, Doc. 207, at 6–7). This Court further held that Defendant's decision not to retain counsel for Great South can only be considered within the bad faith totality of circumstances analysis. (*Id.* at 7). An analysis of the totality of circumstances is necessarily fact specific and requires weighing all the evidence presented at trial. *See Berges*, 896 So. 2d at 680. And "[t]he question of failure to act in good faith with due regard for the interests of the insured is for the jury." *Bos. Old Colony*, 386 So. 2d at 785. Therefore, Plaintiff has not shown that it was improper to submit this issue to the jury.

Plaintiff also argues that Defendant acted in bad faith by depriving Great South the opportunity to participate in global settlement negotiations with the Millses. (Doc. 336 at 20–21). Plaintiff reasons that had Great South been included in these negotiations, the Millses would have "underst[ood] that trial would not be a cake walk and that the possibility of a defense verdict was real," and such an understanding "should have led [the Millses] to accept a global settlement" that included Great South. (*Id.*). However, the evidence shows that the Millses' counsel was in communication with Plaintiff before the Millses released Defendant's other

insureds. (Doc. 132-16 at 1–2; *see also* Doc. 132-17 at 1 ("I haven't made any progress with the insurer for Great South . . . . [Plaintiff] or their attorney, could contact me any day to discuss a settlement.")). Furthermore, the evidence shows that the Millses were not willing to include Great South in Defendant's global settlement because of the existence of Great South's additional insurance with Plaintiff. (Trial Tr. Vol. 3, Doc. 346, at 157:16–25) ("[W]e were not going to agree to Great South being on . . . those releases."). Thus, there was an issue of fact as to whether it was bad faith to not include Great South in the global settlement discussions as well as whether such exclusion caused any harm to Plaintiff given the Millses unequivocal statement that it would not include Great South in any global settlement. This issue was properly submitted to the jury.

Plaintiff's remaining arguments are overlapping and can be summarized succinctly as: Defendant acted in bad faith by failing to adequately communicate with Great South. (*See* Doc. 336 at 17–21 (including failing to promptly confirm/explain coverage, failing to timely communicate, and failing to advise of how to avoid an excess judgment)). This argument suffers from the same problems as those already addressed because Plaintiff does not explain how Defendant's alleged failure to adequately communicate with Great South in and of itself establishes that Defendant acted in bad faith rather than a factor for the jury to consider within the totality of the circumstances analysis. Plaintiff also failed to

articulate how the specific failures to communicate caused Plaintiff damages other than an ambiguous assertion that Plaintiff incurred legal expenses in defense of Great South. (*Id.* at 24). This complete lack of evidence of a causal connection renders it impossible for Plaintiff to prevail on this position as a matter of law. *See Perera*, 35 So. 3d at 901 ("[T]he existence of a causal connection is a prerequisite-in other words, the claimed damages must be caused by the bad faith."). Accordingly, Plaintiff's JMOL Motion will be denied.

### III.   MOTION FOR NEW TRIAL

#### A.   Legal Standard

After a jury trial, a district court may grant a request for a new trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). "When ruling on a motion for a new trial, a trial judge must determine if in his opinion, the verdict is against the clear weight of the evidence . . . or will result in a miscarriage of justice." *Ins. Co. of N. Am. v. Valente*, 933 F.2d 921, 923 (11th Cir. 1991) (citations and quotations omitted). Additionally, "new trials should not be granted on evidentiary grounds unless, at a minimum, the verdict is against the great—not merely the greater—weight of the evidence." *Id.*

#### B.   Analysis

Plaintiff seeks a new trial based on alleged errors in the jury instructions, the exclusion of witness testimony, and the purported appearance of bias and prejudice against Plaintiff. (Doc. 338 at 2–23)

### 1. Jury Instructions

Plaintiff first argues in support of a new trial that the Court erroneously failed to give necessary jury instructions that Plaintiff requested. (*Id.* at 2–3). "A motion for new trial premised on erroneous jury instructions is properly granted only where there is 'substantial and ineradicable doubt as to whether the jury was properly guided in its deliberations.'" *Ocean View Towers Ass'n, Inc. v. QBE Ins. Corp.*, No. 11-60447-CIV, 2012 WL 882577, at *2 (S.D. Fla. Mar. 15, 2012) (quoting *Johnson v. Barnes & Noble Booksellers, Inc.*, 437 F.3d 1112, 1115 (11th Cir. 2006)). The standard is "whether the jury charges, considered as a whole, sufficiently instructed the jury so that the jurors understood the issues and were not misled." *Johnson*, 437 F.3d at 1115 (quotation omitted). "If jury instructions accurately reflect the law, the trial judge is given wide discretion as to the style and wording employed in the instruction." *Johnston v. Companion Prop. & Cas. Ins. Co.*, 318 F. App'x 861, 864 (11th Cir. 2009). Thus, the Court must decide whether the jury was properly guided in its deliberations with accurate reflections of the law.

### a. Plaintiff's Requested Jury Instruction No. 22

Plaintiff requested the following instruction: "The focus in a bad faith case is not on the actions of Great South [], [Plaintiff] or their attorneys, but rather on the actions of [Defendant] and its obligation to act in good faith towards Great South [] and its excess insurer, [Plaintiff]." (Joint Proposed Jury Instructions, Doc. 290, at 107).

Instruction 11 of the Court's Instructions to the Jury stated: "The question of whether an insurer has acted in bad faith is determined under the totality of the circumstances standard. This standard factors in all the circumstances, rather than focusing on any single dispositive factor. In determining whether Defendant acted in bad faith under the totality of the circumstances, the actions of the Plaintiff and Great South [] are not the focus but can be considered." (Doc. 326 at 12).

Plaintiff now argues that the Court erred by not "direct[ing] the jury to focus its inquiry on [Defendant's] actions, as is required by the [Eleventh Circuit] in its *Brink* holding." (Doc. 338 at 4 (referring to *Brink v. Direct General Insurance Company,* 38 F.4th 917 (11th Cir. 2022))). First, Plaintiff misstates the holding in *Brink*, which is that a proper instruction "ke[eps] the focus away from the actions of [plaintiff's] attorney while still allowing the jury to consider them" because "the jury [is] allowed to consider [plaintiff's] actions as part of the totality of the circumstances." 38 F.4th at 924. Instruction 11 properly instructed the jury that the actions of Plaintiff and Great South "are not the focus but can be considered." (Doc.

326 at 12). Second, Instruction 11 correctly frames the focus on Defendant's actions "[i]n determining whether *Defendant acted* in bad faith under the totality of the circumstances." (*Id.* at 12 (emphasis added)). Therefore, Instruction 11 is an accurate reflection of the law. *See Pelaez v. Gov't Employees Ins. Co.*, 13 F.4th 1243, 1254 (11th Cir. 2021) ("In a bad faith action there's a difference between <u>focusing</u> on a claimant's actions, which would be improper, and <u>factoring</u> a claimant's actions into the totality of the circumstances analysis, which is not improper." (emphasis in original)).

b.    <u>Plaintiff's Requested Jury Instruction No. 23</u>

Plaintiff requested the following jury instruction: "There is no comparative bad faith in Florida. Therefore, [Defendant] cannot escape its own conduct by pointing to negligent acts or omissions by Great South [] or [Plaintiff]." (Doc. 290 at 110). The Court did not instruct the jury as to whether there was or was not comparative bad faith in Florida because Defendant did not raise a comparative bad faith argument at trial.

Plaintiff now argues that because Defendant "call[ed] into question" Plaintiff's claim handling, the lack of a jury instruction on comparative bad faith in Florida confused the jurors. (Doc. 338 at 4–5). On the contrary, including an instruction on the absence of comparative bad faith when the concept was not presented to the jury during the course of trial would have been confusing.

Additionally, the jury was properly instructed on how to consider Plaintiff's actions, including the handling of Great South's claim. *See supra* Section III.B.1.a. Thus, the jury was not misled by the lack of a comparative bad faith instruction.

c.     Plaintiff's Requested Jury Instruction No. 40

Plaintiff requested the following jury instruction: "[Plaintiff] is not precluded from recovering amounts it paid to defend and indemnify Great South merely because it has its own independent obligations to Great South. Great South, as an excess insurer, is entitled to recover money it paid that it should not have been required to pay absent bad faith by [Defendant] as the primary insurer." (Doc. 290 at 154).

Instruction 12 of the Court's Instructions to the Jury stated: "[I]f you determine Defendant acted in bad faith, you must also find that Defendant's bad faith caused Plaintiff to pay money it would not have otherwise been required to pay. If you find that bad faith conduct by Defendant caused damages to Plaintiff, you will determine the total damages of Plaintiff." (Doc. 326 at 13).

Plaintiff now argues that it was prejudiced by the Court not providing its requested instruction because it dealt with an issue properly before the jury. (Doc. 338 at 5–6). However, Defendant never argued that Plaintiff's independent obligations to Great South would preclude it from recovering in this case. Thus, such an instruction would have similarly been unnecessary and confusing to the jury.

Furthermore, Instruction 12 accurately reflects the law on recovery of damages in a bad faith claim. *See Vigilant Ins.*, 33 So. 3d at 738 ("[T]he insured . . . is damaged because it has paid . . . money that it should not have been required to pay, absent the primary insurer's bad faith."). Therefore, the jury was not misled in its deliberations.

          d.    <u>Plaintiff's Requested Jury Instructions Nos. 13, 14, 17, and 27</u>

Plaintiff requested the following jury instruction: "Another factor for you to consider in determining whether [Defendant] acted in bad faith is whether [Defendant] complied with the Florida Adjuster Code of Ethics." (Doc. 290 at 81). Plaintiff also requested an instruction which described Florida Administrative Code Rule 69B-220.210 ("Florida Adjuster Code of Ethics") and an instruction that "an insurer's failure to meet an insurance industry standard can be considered as evidence of bad faith conduct." (*Id.* at 84, 120). The Court did not instruct the jury as to whether it could or could not consider Defendant's compliance with the Florida Adjuster Code of Ethics or other industry standards.

Plaintiff now argues that its proposed instructions were relevant to the jury and the Court's exclusion of those instructions prejudiced it. (Doc. 338 at 6–7, 9–10). For support, Plaintiff cites to *Primeaux*, in which the court permitted testimony "about the standards and practices of the insurance industry and whether [defendant]

complied with those standards," including the Florida Adjuster Code of Ethics. 2022 U.S. Dist. LEXIS 140775 at *5. Much like in *Primeaux*, Plaintiff was permitted to argue and present testimony that Defendant failed to comply with industry standards, like the Florida Adjuster Code of Ethics. But *Primeaux* does not address the issue of whether a jury instruction on the issue should be given.

Plaintiff also cites to *Citizens Property Insurance Corporation v. Mendoza*, which merely mentioned in dicta that compliance with the code of ethics are "considerations [that] may be appropriate in a bad faith case," 250 So. 3d 716, 719 (Fla. 4th DCA 2018), and *La Vigne v. Safeco Insurance Company*, which denied summary judgment in part because of expert testimony on the code of ethics, No. 3:17-cv-167-J-20PDB, 2018 U.S. Dist. LEXIS 224443, at *18 (M.D. Fla. Sep. 12, 2018). Again, neither of these cases addressed the issue of jury instructions. And whether something may be considered by the jury is not the relevant inquiry for whether that issue should have been included in the jury instructions. Rather, the instructions must, when "considered as a whole, sufficiently instruct[] the jury so that the jurors underst[and] the issues and [are] not misled." *Bearint ex rel. Bearint v. Dorell Juv. Grp., Inc.*, 389 F.3d 1339, 1351 (11th Cir. 2004).

Plaintiff fails to show why its requested instructions on industry standards were necessary to guide the jury in its deliberations. The jury was properly instructed on how to conduct the totality of circumstances analysis for an insurer's bad faith.

(*See* Doc. 326 at 10–12). Plaintiff was free to argue to the jury what it should or should not consider within that analysis. It is counsel's prerogative, not the Court's, to highlight what the jury should consider a "key factor." (Doc. 338 at 8).[5]

e.       Plaintiff's Requested Jury Instruction No. 6

Plaintiff also requested the following jury instruction: "The primary insurer, [Defendant], owes the excess insurer, [Plaintiff], the same good faith duties it owes to their common insured, Great South []. In other words, [Defendant] owed a duty to Great South [] and to [Plaintiff] to act in good faith and with due regard for the interests of Great South [] and [Plaintiff]." (Doc. 290 at 63).

Instruction 13 of the Court's Instructions to the Jury stated: "Under the doctrine of equitable subrogation, an excess insurer has the right to maintain a cause of action for damages resulting from the primary insurer bad faith in handling a claim against their common insured. The excess insurer stands in the shoes of the insured, to whom the primary insurer directly owes a duty to act in good faith. The principle of equitable subrogation is that the primary insurer is held responsible to the excess insurer for the failure to meet good faith obligations." (Doc. 326 at 14).

Plaintiff now argues that its proposed instructions "would have been especially helpful to the jury" because the "case was based on legal principles which

_____

[5] For the same reasons, the Court did not include Plaintiff's Requested Jury Instruction No. 17 which states that the jury may consider "the timing and substance of [Defendant's] investigation of the insurance coverages." (Doc. 290 at 92; *see also* Doc. 338 at 8).

would not be intuitively known or fall within the common knowledge of jurors."

(Doc. 338 at 8). However, Plaintiff does not address how Instruction 13 was legally

deficient or how it misguided the jury in its deliberations. Instruction 13 explains

Defendant's duty to Plaintiff and is a correct reflection of the law. *See Perera*, 35

So. 3d at 900 ("[T]he excess insurer stands in the shoes of the insured, to whom the

primary insurer directly owes a duty to act in good faith.").

> f.    Plaintiff's Requested Jury Instructions Nos. 18 and 19

Plaintiff requested the following jury instruction: "An insurer must conduct a

full investigation of all claims against all its insureds arising out of an accident before

endeavoring to settle claims against any individual insured, while keeping all

insureds informed at all junctures of the process." (Doc. 290 at 98). Plaintiff also

requested an instruction which included, *inter alia*, that "[w]hile an insurer may

fulfill its duties of good faith even when one insured is excluded from a settlement

agreement, this alone does not excuse [Defendant] from being held to its general

duties of good faith in reaching, and outside of, the settlement agreement." (*Id.* at

95).

Instruction 10 submitted to the jury thoroughly explained the parameters of

an insurer's good faith duty obligations. (Doc. 326 at 11). Plaintiff now argues that

its requested instructions "were accurate statements of the law and dealt with issues

properly before the jury." (Doc. 338 at 9). Plaintiff again does not address how the

Court's instruction is deficient or how the jury was misguided by the exclusion of its requested instructions.

g.      Plaintiff's Requested Jury Instruction No. 31

Plaintiff requested the following jury instruction: "When an insurer undertakes to provide legal counsel to one or more of its multiple insureds, under Florida law the insurer must provide legal counsel to all of its insureds as the insurer is required to treat its insureds equally in order to exercise good faith conduct." (Doc. 290 at 130). As discussed above, *see supra* Section II.B., Plaintiff cannot cite to any authority for its position that Florida law requires an insurer to provide legal counsel to all of its insureds if it does so for one of multiple insureds. For support Plaintiff cites to the Florida Adjuster Code of Ethics, which merely states that "[a]n adjuster shall treat all claimants equally." Fla. Admin. Code Ann. R. 69B-220.201.

At trial, Plaintiff's expert testified that it is "industry standard in claims handling that when there are multiple insureds, the insureds should be treated equally," (Doc. 347 at 131:12–15), and Plaintiff argued that Defendant breached that industry standard by not retaining counsel for Great South, (*id.* at 189:22–190:7). But the administrative code of ethics is not the standard for an insurer's good faith duties, it is merely for the jury to consider within the totality of circumstances. *See e.g., Primeaux*, 2022 U.S. Dist. LEXIS 140775, at *5 (holding that testimony on the code of ethics would assist a jury in determining whether defendant acted with the

appropriate diligence and care of an ordinary and prudent person). Therefore, Plaintiff's requested instruction is not an accurate reflection of the law because it is not Florida law that an insurer's failure to comply with the Florida Adjuster Code of Ethics is necessarily bad faith.

Furthermore, Instruction 10 correctly states that even an insurer's failure "may not be in bad faith if the insurer's actions were reasonable and within the purview of its duty of good faith." (Doc. 326 at 11); *see Mesa v. Clarendon Nat. Ins. Co.*, 799 F.3d 1353, 1359 (11th Cir. 2015). Thus, an insurer's failure to provide counsel equally is not *per se* bad faith conduct. Accordingly, the jury was not misled in its deliberations and this Court will not grant a new trial based on the jury instructions.

### 2.   *Exclusion of Witness Testimony*

Plaintiff also seeks a new trial based on the exclusion of witness testimony, which includes portions of deposition testimony of Defendant's corporate representative, Douglas Helton, and the testimony at trial of Defendant's expert, Douglas McIntosh. (Doc. 338 at 11–19). As to the former, Plaintiff argues that the Court erroneously excluded "highly relevant inquiries pertaining to industry standards for Florida claim handling" which would have "demonstrate[d] to the jury the fact that [Defendant] was well aware of the applicable industry standards." (*Id.* at 12). As to the latter, Plaintiff argues that the Court erroneously limited its cross-examination of McIntosh at trial on the expert's prior testimony in other cases and

the relationship between him, Defendant, and Defendant's counsel, which "deprived the jury from hearing necessary and important information pertaining to the potential bias of [Defendant's] expert witness." (*Id.* at 19).

The Eleventh Circuit has repeatedly held "that new trials should not be granted on evidentiary grounds unless, at a minimum, the verdict is against the great—not merely the greater—weight of the evidence." *Valente*, 933 F.2d at 923. In fact, "[t]he trial judge's discretion to set aside a jury verdict based on the great weight of the evidence is very narrow." *Hewitt v. B.F. Goodrich Co.*, 732 F.2d 1554, 1559 (11th Cir. 1984). The Court need not rehash each of its evidentiary rulings because the jury's verdict is not against the great weight of the evidence, nor will it result in a miscarriage of justice.

The evidence shows that Defendant attempted to include Great South in the global settlement with the Millses but the Millses refused to settle with Great South within Defendant's policy limit because the Millses' were aware that Great South had additional insurance with Plaintiff. (*See e.g.*, Doc. 346 at 155:6–157:25 ("[The Millses] felt that we had additional insurance that . . . we could attach to Great South [], as well as . . . some different theories of negligence against them. They were separate and apart from simply the collision itself.")). The evidence further shows that Plaintiff was informed of the Millses' position and was in communication with the Millses' counsel before the Millses released Defendants other insureds. (Doc.

132-16 at 1–2; *see also* Doc. 132-17 at 1). Once the Millses released Defendant's other insureds, Defendant's policy limits were exhausted and it no longer had a duty to defend Great South. (*See* Doc. 207 at 6).

As discussed more thoroughly above, *see supra* Section II.B., Plaintiff's presentation at trial of Defendant's alleged bad faith conduct was plagued by legal and factual issues. Given the great weight of evidence in favor of Defendant, permitting testimony of Helton's knowledge of industry standards or allowing further impeachment of McIntosh would not have dramatically altered the legal issues of this case. Accordingly, the Court will not grant a new trial based on the exclusion of witness testimony.

### 3. *Bias and Prejudice Against Plaintiff*

Lastly, Plaintiff seeks a new trial based on the Court's alleged appearance of bias and prejudice against it and its counsel. Plaintiff argues that the Court "audibly laugh[ed], in a derisive manner" when Plaintiff's counsel objected to Defendant's proffer of McIntosh as an expert and "repeatedly chastised" Plaintiff's counsel for failing to stand when addressing the Court pursuant to Local Rule 5.03(c)(1). (Doc. 338 at 20–21). Additionally, Plaintiff argues that the Court's evidentiary rulings against it reveal "apparent bias," which in combination with the aforementioned resulted in an unfair trial. (*Id.* at 22–23).

Plaintiff did not move for recusal in this case by filing a "timely and sufficient affidavit that the [undersigned] has a personal bias or prejudice" against it pursuant to 28 U.S.C. § 144.[6] In *Hamm v. Members of Bd. of Regents of State of Fla.*, the Eleventh Circuit faced a similar argument on appeal from a plaintiff that failed to move for recusal in the trial court and the Eleventh Circuit analyzed the trail judge's conduct by the standards for recusal. 708 F.2d 647, 651 (11th Cir. 1983). "The general rule is that bias sufficient to disqualify a judge must stem from extrajudicial sources and must be focused against a party to the proceeding." *Id.* (citation omitted). "When, as here, a judge is alleged to have demonstrated bias based on comments made during trial, those comments must be pervasive and prejudicial." *Preston v. Sec'y, Dep't of Corr.*, 745 F. App'x 835, 839 (11th Cir. 2018). Remarks that are merely "intemperate and impatient" are not valid grounds for recusal because "[n]either a trial judge's comments on lack of evidence, rulings adverse to a party, nor friction between the court and counsel constitute pervasive bias." *Hamm*, 708 F.2d at 651.

The Court disagrees with Plaintiff's characterizations of its actions as demonstrating bias and prejudice. Plaintiff's counsel was provided multiple "gentle reminders," outside the presence of the jury, to comply with Local Rule 5.03 and

---

[6] Neither did the undersigned disqualify himself because of an "impartiality might reasonably be questioned" pursuant to 28 U.S.C. § 455.

stand when addressing the Court, *United States v. Pritchett*, 908 F.2d 816, 820 n.4 (11th Cir. 1990), but he continued to fail to do so.[7] Additionally, "challenges to adverse rulings are generally grounds for appeal, not recusal," *In re Evergreen Sec., Ltd.*, 570 F.3d 1257, 1274 (11th Cir. 2009), and the Court has already addressed Plaintiff's arguments for a new trial based on evidentiary rulings, *see* supra Section III.B.2. Finally, the Court does not recall audibly laughing at trial, but even so, that alone would not constitute "a partisan zeal for [Defendant] or [having] stepped down from the bench to assume the role of advocate on [Defendant's] behalf." *Hamm*, 708 F.2d at 651.

While it is unfortunate that Plaintiff apparently perceived bias and prejudice against it, these are not grounds for a new trial. In sum, there are no valid grounds for ordering a new trial. Accordingly, Plaintiff's Motion for a New Trial will be denied.

## IV.  CONCLUSION

In accordance with the foregoing, it is **ORDERED** and **ADJUDGED** as follows:

---

[7] Plaintiff's counsel might consider that the need to repeatedly remind counsel to comply with Local Rule 5.03 could have been avoided. Counsel either neglected to comply or refused, both unacceptable.

1. Plaintiff's Motion for Directed Verdict (Doc. 313) is **DENIED as moot**.

2. Plaintiff's Renewed Motion for Judgment as a Matter of Law (Doc. 316) is **DENIED as moot**.

3. Plaintiff's Renewed Motion for Judgment as a Matter of Law (Doc. 336) is **DENIED**.

4. Plaintiff's Alternative Motion for New Trial (Doc. 337) is **DENIED as moot**.

5. Plaintiff's Alternative Motion for New Trial (Doc. 338) is **DENIED**.

**DONE** and **ORDERED** in Orlando, Florida on September 30, 2023.



CARLOS E. MENDOZA
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record